PLOTKIN, Judge,
dissents with written reasons:
I dissent and would reverse the summary judgment and remand for trial because there exists a genuine issue of material facts which makes summary judgment inappropriate. In my view, the majority misinterpreted and misapplied the legal precepts applicable to the primary issues in *470 this case. However, I concur in the majority’s holding that the award for attorney fees should be reversed.
A serious factual dispute exists concerning whether Abraham actually purchased the Mercedes-Benz or whether she was merely the recipient of a gift. Abraham contends that Ark’s president, Khan, conducted all the negotiations and made all payments, as well as all promises to pay the debt, and that Benson knew that the car was gift to her not subject to any personal liability on her part. The record supports her contentions since it establishes, beyond a doubt, that Benson knew that a third party was purchasing the car for Abraham. Benson received the cash down payment of $1000 and the undated check in the sum of $80,491. Additionally, the record reveals that all of the promises to pay the debt were made exclusively by Khan. Abraham was not involved in any negotiations, nor did she sign any documents obligating herself to pay the debt.
The majority bases its conclusion that Abraham is a co-debtor with Khan and therefore personally liable for the debt on the following facts: (1) She signed the purchase order; (2) She accepted delivery of the automobile; (3) She consented to having the vehicle titled in her name; and (4) Her attorney acknowledged her responsibility for the debt in a memorandum of law. The majority correctly recognizes that La. C.C. art. 1848 permits Abraham to utilize parole evidence to modify and explain the intent of the parties to the contract.
Abraham contends and the record indicates that the vendor’s purchase order form was merely a salesman’s worksheet, a technical formality which must be executed before the title could be issued in her name. The purchase order form, without a proper foundation, cannot be considered a self-executing binding commercial transaction. It is not a bill of sale of a movable, which results in the transfer of title in this state. Thus a factual dispute exists concerning the validity and purpose of the “purchase order,” which can only be decided at trial.
Abraham’s actions — accepting delivery of the automobile and consenting to having the car titled in her name — does not trigger debtor responsibility. Louisiana has adopted a written title system of ownership. The law does not prohibit a third party from purchasing an automobile, then registering the title in a donee’s name. This common practice occurs when parents purchase cars for their children and when, as in this case, one adult buys a present for another.
Another factual dispute concerns whether the car was a gift to Abraham. La.C.C. art. 1551, relative to donations inter vivos, provides as follows:
The property given passes to the donee with all its charges, even those which the donor has imposed between the time of the donation and that of the acceptance.
However, the rule established by the above article has been held to have no application under facts almost identical to those in the instant case, where the vendor knew that the object was purchased expressly as a gift for a third person not a party to the transaction and where the donation was actually made in the presence of the vendor. Snell v. Hart Jewelry Co., 14 Orl. App. 94 (1916). Under such circumstances, the vendor is considered to have tacitly waived his privilege established by La.C.C. art. 1551 for the price of the object. Id. at 97. Even if the object passes to the donee subject to the vendor’s privilege, “still there is no law which imposes upon her as donee a personal liability for the price.” Id. at 96-97. As in the Snell case, this issue must await adjudication by trial.
The rule of law relating to the sale of a movable should be regulated by an economic analysis — i.e., who should bear the risk of loss. The vendor (Benson Motor Co.) is a sophisticated seller of automobiles and the buyer (Khan) with whom all negotiations and bargaining occurred was a questionable credit risk, untrustworthy and possibly dishonest. The titled buyer (Abraham) may be a good faith possessor-donee who had no knowledge of the details of the transaction.
The risk of loss in this scenerio should be allocated to the seller of the movable. Re-tailors, particularly car dealers, are better *471 equipped to handle the risk efficiently than are good-faith donees. They have resources available to them, such as credit investigators and associations to research the apparent buyer’s financial background and ability to pay. They belong to trade associations which provide education and information on how to secure a transaction from the risk of loss. They hire experienced salesmen and executives who are trained to sell the product and guarantee that the debt is secure by acquiring a security interest in the movable or assure personal responsibility for payment of the debt. There are standard forms, prepared by lawyers, which protect vendors from all losses. Finally, vendors can and do insure themselves against transaction failure. For these reasons, vendors of movables have superior knowledge and resources, with minimal'transaction costs, as well as the profit incentive to prevent the loss and behave efficiently. Therefore, the vendor is in a superior position to the donee to absorb the loss or avoid the loss by taking the necessary steps to insure that the buyer is a bonafide, authentic and reputable purchaser.
Allocation of the risk of loss, in a cash sale transaction of a movable, to the vendee-donee creates market uncertainty. Vendees and donees must have confidence that their acquisitions are safe and protected against invalid transactions. Good-faith purchasers in the chain of title and good-faith donees should be protected against the risk of loss because they are unable to pool or insure against the risk of recall. Additionally, they do not have the resources or knowledge to challenge attacks on their property. Their transaction costs are maximum, which requires a cost-benefit analysis to determine whether they should contest the legal challenge. In most cases involving a movable, the costs to defend the litigation exceed the benefits. Therefore, I feel that the risk of loss should not be allocated to vendees-donees of movables.
For these reasons, I would reverse the summary judgment granted to plaintiff Stephens Imports, d/b/a Benson Motor Co. and remand for trial on the merits.